**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| H-D U.S.A., LLC, | ) | |
| | ) | Case No. 17-cv-04341 |
| Plaintiff, | ) | |
| | ) | **Judge Thomas M. Durkin** |
| v. | ) | |
| | ) | **Magistrate Judge Young B. Kim** |
| ZHIYASM2016, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Declaration of Linda Heban**

1

## DECLARATION OF LINDA HEBAN

I, Linda Heban, declare and state as follows:

1.  This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2.  I am Vice President and Chief Trademark Counsel for H-D U.S.A., LLC, ("Harley-Davidson"). I am knowledgeable of or have access to business records concerning all information referenced herein, including, but not limited to, Harley-Davidson's trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, and media coverage. I am intimately familiar with Harley-Davidson products and services, and with identifying counterfeits thereof. I make this declaration from matters within my own knowledge save where otherwise stated.

3.  Harley-Davidson is a world-famous manufacturer of motorcycles and a wide variety of other products and services, including apparel, jewelry, leather goods, and assorted accessories. Founded in 1903, Harley-Davidson has manufactured, promoted and sold motorcycles and related products for over 110 years.

4.  Since at least as early as 1903, Harley-Davidson has used and promoted the HARLEY-DAVIDSON name and trademark in connection with motorcycles, motorcycle parts and accessories.

5.  Since at least as early as 1910, Harley-Davidson has used its Bar & Shield Logo. The Bar & Shield Logo and variations thereof, including, but not limited to, those shown below (collectively, the "Bar & Shield Logo"), are used for motorcycles and related products and services.



6.      Since about 2000, Harley-Davidson has used its Willie G. Skull Logo (or variations thereof), including, but not limited to, those shown below (collectively, the "Willie G. Skull Logo"), for motorcycles and related products and services.



7.      Since about 2008, Harley-Davidson has used its Dark Custom Logo (or variations thereof), including, but not limited to, as shown below (collectively, the "Dark Custom Logo"), for motorcycles and related products and services.



8.     Harley-Davidson has continuously sold motorcycles and related goods under the HARLEY-DAVIDSON, Bar & Shield Logo, Willie G. Skull Logo, Dark Custom Logo, and other trademarks (collectively, the "HARLEY-DAVIDSON Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in the HARLEY-DAVIDSON Trademarks. Harley-Davidson's use of the marks has also built substantial goodwill in and to the HARLEY-DAVIDSON Trademarks. The HARLEY-DAVIDSON Trademarks are famous marks and valuable assets of Harley-Davidson. Harley-Davidson Products typically include at least one of the registered HARLEY-DAVIDSON Trademarks.

9.     For generations, the Harley-Davidson brand has been the undisputed world leader in the field of motorcycles and related products, including those which prominently display the famous, internationally recognized, and federally registered HARLEY-DAVIDSON Trademarks (collectively, the "Harley-Davidson Products").

10.     Several of the HARLEY-DAVIDSON Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 0,507,163 | HARLEY-DAVIDSON | Mar. 01, 1949 | For: Motorcycle shirts; sweaters; breeches; neckties; coveralls; rain coats and hats; jackets; helmets; caps; and boots in class 025 |
| 0,508,160 | HARLEY-DAVIDSON | Apr. 05, 1949 | For: Electric lamps and spare parts for same; spark plugs; and electric signs in classes 007, 009, 011, 012, and 015 |
| 0,526,750 | **HARLEY – DAVIDSON** | Jun. 27, 1950 | For: Motorcycles and structural parts thereof; accessories-namely, intermediate stands, seats, foot rests and extensions, windshields, fender tips, exhaust stacks, grips, name plates, saddle covers, luggage carriers, license frames, foot pedal |

| | | | |
|---|---|---|---|
| | | | pads, tandem seats, foot rests, and rear view mirrors in classes 007, 012, 022, and 027 |
| 1,078,871 | HARLEY-DAVIDSON | Dec. 06, 1977 | For: Vehicles-namely, motorcycles in class 012 |
| 1,205,380 |  | Aug. 17, 1982 | For: Motorcycles in class 012<br><br>For: Clothing-Namely, T-Shirts in class 025 |
| 1,219,955 | HARLEY-DAVIDSON | Dec. 14, 1982 | For: Parts and service manuals for motorcycles, parts catalogs for motorcycles, newsletters and magazines dealing with motorcycles, calendars, posters, and decals in class 016 |
| 1,224,868 |  | Jan. 25, 1983 | For: Decorative Items for Motorcycles-Namely, Medallions in class 006<br><br>For: Fitted Motorcycle Covers in class 012<br><br>For: Key Ring Fobs in class 014<br><br>For: General Purpose Decals; Decorative Items for Motorcycles-Namely, Decals, and Metallic Foil Decals in class 016<br><br>For: Drinking Cups and Mugs in class 021<br><br>For: Clothing-Namely, Jackets, T-Shirts, Tank Tops, Sweat Shirts, Bandannas, Hats, Caps, and Boots in class 025<br><br>For: Stick, Lapel, and Hat Pins, All of Nonprecious Metals, and Decorative Cloth Patches in class 026<br><br>For: Cigarette Lighters in class 034 |

| 1,234,404 | HARLEY-DAVIDSON | Apr. 12, 1983 | For: Sunglasses and Protective Helmets for Motorcyclists in class 009<br><br>For: Clothing-Namely, Jackets, Pants, Shirts, T-Shirts, Vests, Jeans, Riding Suits, Bandannas, Rain Suits, Shorts, Nightgowns, Halters, Underwear, Tank Tops, Sweatshirts, Night Shirts, Socks, Gloves, Hats, Caps and Boots in class 025 |
| --- | --- | --- | --- |
| 1,263,936 |  | Jan. 17, 1984 | For: First Aid Kits Containing General Purpose First Aid Supplies Such as Bandages, Bandage Compressors, Ammonia Inhalant, Tourniquets, Anti-Bacterial Solutions, Burn Emollient, and Picric Acid Gauze in class 005<br><br>For: Medallions and non-luminous non-mechanical signs made primarily of metal and plastic in class 006<br><br>For: Sunglasses, battery chargers, protective motorcycle crash helmets and luminous signs in class 009<br><br>For: Electric lamps in class 011<br><br>For: mud flaps, fuel door plates, air cleaners, radio caddies, motorcycle tank and fender sets, leather motorcycle bags and motorcycles in class 012<br><br>For: Jewelry-Namely, Necklaces, Rings, and Key Fobs in class 014<br><br>For: Posters, paper decals and playing cards in class 016<br><br>For: Wallets in class 018<br><br>For: Decorative Wall Plaques and Mirrors in class 020<br><br>For: Mugs and Insulated Drinking Steins in class 021 |

| | | | |
|---|---|---|---|
| | | | For: Towels in class 024 |
| | | | For: Clothing-Namely, T-Shirts, Jackets, Blue Jeans, Sweat Shirts, Underwear, Bandanas, Headwear, Socks, Boots, Cycle Riding Suits, Belts and Suspenders in class 025 |
| | | | For: Embroidered patches, belt buckles and lapel, hat and stick pins all of non-precious metals in class 026 |
| | | | For: Cigarette lighters in class 034 |
| 1,311,457 | HARLEY-DAVIDSON | Dec. 25, 1984 | For: Repair and Servicing of Motorcycles in class 037 |
| | | | For: Retail store services in the field of motorcycles in class 042 |
| 1,352,679 | HARLEY | Aug. 06, 1985 | For: Motorcycles in class 012 |
| 1,406,876 | HARLEY | Aug. 26, 1986 | For: Clothing; namely--tee shirts for men, women and children; knit tops for women and girls; and children's shirts in class 025 |
| 1,450,348 | HARLEY-DAVIDSON | Aug. 04, 1987 | For: metal articles, namely, key fobs, key chains and license plate holders in class 006 |
| | | | For: Knife sheaths in class 008 |
| | | | For: Necklaces, earrings, pins of non-precious metals, clocks and watches in class 014 |
| | | | For: Children's books, bumper stickers, removable tattoos, pressure sensitive decals, checkbook covers, and playing cards in class 016 |
| | | | For: Leather goods, namely, purses, wallets, duffle bags, motorcycle saddle bags, and key fobs in class 018 |
| | | | For: Mirrors in class 020 |
| | | | For: Mugs, drinking glasses, coasters, decanters, cups, and |

| | | | |
|---|---|---|---|
| | | | plastic mugs in class 021<br><br>For: Towels, and bed spreads in class 024<br><br>For: Sweat pants, sweaters, suspenders, scarves, bandanas, leather clothing, namely, jackets, vests, gloves, jeans, chaps, tops, boots, shorts, caps, belts, and parts of footwear, namely boot tips, in class 025<br><br>For: Stuffed toy animals, toy banks, and model kits in class 028<br><br>For: Cigarette cases, lighter cases, and cigarette lighters in class 034 |
| 1,511,060 |  | Nov. 01, 1988 | For: Clothing, namely, boots, sweat shirts, jeans, hats, caps, scarves, motorcycle riding suits, neck ties, shirts, t-shirts, jackets, vest, ladies tops, and bandanas in class 025 |
| 1,602,474 | HARLEY-DAVIDSON | Jun. 19, 1990 | For: Belt buckles in class 026 |
| 1,606,282 | HARLEY-DAVIDSON | Jul. 17, 1990 | For: Safety goggles, protective helmets and sunglasses in class 009 |
| 1,621,383 | HARLEY-DAVIDSON | Nov. 06, 1990 | For: Model toy motorcycles, miniature motorcycle replicas, model toy trucks, and electronically operated toy motorcycles in class 028 |
| 1,660,539 |  | Oct. 15, 1991 | For: Knives; namely, buck knives, sporting and hunting knives, folding pocket knives, knife cases therefor, and tool kits comprising wrenches and pliers in class 008<br><br>For: sunglasses, and motorcycle parts; namely, gauges, batteries, and cruise controls in class 009<br><br>For: Flashlights in class 011<br><br>For: motorcycles and motorcycle parts; namely, air cleaners, drive belts, belt guards, brakes, chains, |

| | | | clutches, crankcases, engine cylinders, fenders and fender supports, footboards, forks, fuel tanks, leg guards, handlebars, cylinder heads, mirrors, oil filters, oil pumps, seats, shock absorbers, backrests, wheels, and windshields in class 012 |
| --- | --- | --- | --- |
| | | | For: Ankle bracelets, bracelets, earrings, necklaces, rings, tie tacks, watch bands, watches, wall clocks, and ornamental lapel pins in class 014 |
| | | | For: Books about motorcycles, calendars, decals, pens, photo albums, posters, and removable tattoos in class 016 |
| | | | For: Holders for cans in the nature of a rubber cylinder, duffle bags, garment bags, key fobs, suitcases, and wallets in class 018 |
| | | | For: Wall mirrors and wall plaques in class 020 |
| | | | For: Drinking glasses, mugs, and can holders in the nature of an insulated rubber cylinder in class 021 |
| | | | For: Towels in class 024 |
| | | | For: Belts, chaps, denim pants, gloves, hats, caps, jackets, neckties, night shirts, pants, rain suits, shirts, socks, suspenders, sweaters, sweatshirts, tank tops, athletic shoes, shoes, boots, t-shirts, underwear, vests and wristbands in class 025 |
| | | | For: Belt buckles not made of precious metal, boot chains, and embroidered patches for clothing in class 026 |
| | | | For: Automobile floor mats in class 027 |
| | | | For: Toy trucks in class 028 |

| | | | |
|---|---|---|---|
| | | | For: Beer in class 032 <br><br> For: Lighter holders, cigarette cases, lighter cases, and lighters, all of the foregoing not being made of precious metal in class 034 |
| 1,683,455 | HARLEY | Apr. 14, 1992 | For: Shirts, tank tops, boots, and sweatshirts in class 025 |
| 1,708,362 | HARLEY | Aug. 18, 1992 | For: Embroidered patches for clothing in class 026 |
| 1,711,882 |  | Sep. 01, 1992 | For: Embroidered patches for clothing in class 026 |
| 1,741,456 |  | Dec. 22, 1992 | For: Embroidered patches and belt buckles not of precious metals in class 026 |
| 1,793,137 | HARLEY OWNERS GROUP | Sep. 14, 1993 | For: Hunting knives, pocket knives and knife cases in class 008 <br><br> For: Road atlases, newsletters, magazines relating to motorcycling, playing cards, and decals in class 016 <br><br> For: Key fobs, luggage, tote bags, and travel bags in class 018 <br><br> For: Plastic and ornamental pins and badges in class 020 <br><br> For: Glasses, mugs, cups, and insulated can holders in class 021 <br><br> For: Textile flags and banners in class 024 <br><br> For: Clothing, namely, shirts, |

| | | | |
|---|---|---|---|
| | | | sweatshirts, t-shirts, caps, hats, jacket, vests, and bandanas in class 025<br><br>For: Belt buckles and ornamental patches in class 026 |
| 2,281,489 | **HARLEY-DAVIDSON** | Sep. 28, 1999 | For: Necklaces, bracelets, and watch bands in class 014 |
| 2,376,674 |  | Aug. 15, 2000 | For: Metal locks in class 006<br><br>For: Motorcycle parts, namely, spark plugs in class 007<br><br>For: Optical and safety equipment, namely, sunglasses and motorcycle helmets in class 009<br><br>For: Motorcycle parts, namely, mirrors, drive belts made of rubber, swing arm pivot covers, axle nut covers, handgrips, oil pump covers, air cleaner covers, derby covers, caliper covers, seats, brake pedals, motorcycle saddlebags, saddlebag liners, timer covers and fender tips in class 012<br><br>For: Jewelry in class 014<br><br>For: Leather goods, namely traveling bags and saddlery in class 018<br><br>For: Leather gloves in class 025 |

| 2,973,501 |  | Jul. 19, 2005 | For: Bandannas, jackets, shirts, caps, hats, T-shirts, and leather jackets in class 025 |
|---|---|---|---|
| 2,979,002 |  | Jul. 26, 2005 | For: Drinking glasses, mugs, and beverage glassware in class 021 |
| 3,018,481 |  | Nov. 22, 2005 | For: Ornamental novelty pins in class 026 |

| | | | |
|---|---|---|---|
| 3,074,276 |  | Mar. 28, 2006 | For: Metal key chains in class 006 |
| 3,185,946 |  | Dec. 19, 2006 | For: Jackets, baseball hats, caps, shirts and T-shirts in class 025 |
| 3,304,863 |  | Oct. 02, 2007 | For: Metal key fobs and non-luminous and non-mechanical metal signs in class 006 |
| 3,393,839 |  | Mar. 11, 2008 | For: House mark for a full line of clothing, footwear and headwear in class 025 |
| 3,393,840 | HARLEY-DAVIDSON | Mar. 11, 2008 | For: House mark for a full line of clothing, footwear and headwear in class 025 |

| 3,447,304 |  | Jun. 17, 2008 | For: A full line of clothing in class 025 |
|---|---|---|---|
| 3,490,890 | HARLEY-DAVIDSON | Aug. 26, 2008 | For: House mark for a line of motorcycles, structural parts for motorcycles and related motorcycle accessories, namely, seats, backrests, decorative fuel tank panels, transmission gears, fuel tanks, wheel sprockets, gear shifts, clutches, battery covers and straps, front rear, and intermediate kickstands, hub caps, shift knobs, foot rests and extensions, windshields, leg shields, fender tips, brake pedals, handlebar grips, safety guards, namely, bars for attachment to motorcycles, steering dampers, shock absorbers, spare wheels, spare wheel carriers, boot guards, namely, mud flaps and fenders, saddle covers, luggage carriers, license plate frames, handlebar cross bars, foot pedal pads, tank and fender pads, rearview, fenders and skirts, and wheel balance weights in class 012 |
| 3,559,365 |  | Jan. 13, 2009 | For: House mark for a line of motorcycles, structural parts for motorcycles, and related motorcycle accessories, namely, seats, backrests, decorative fuel tank panels, transmission gears, fuel tanks, wheel sprockets, gear shifts, clutches, battery covers and straps, front , rear, and intermediate kickstands, hub caps, shift knobs, foot rests and extensions, windshields, leg shields, fender tips, brake pedals, handlebar grips, safety guards, namely, bars for attachment to motorcycles, steering dampers, shock absorbers, spare wheels, spare wheel carriers, boot guards, namely, mud flaps and fenders, saddle covers, luggage carriers, license plate frames, handlebar cross bars, foot pedal pads, tank and fender pads, |

| | | | |
|---|---|---|---|
| | | | rearview mirrors, fenders and skirts, and wheel balance weights in class 012 |
| 3,690,031 | HARLEY-DAVIDSON | Sep. 29, 2009 | For: Non-luminous, non-mechanical tin signs, non-luminous, non-mechanical metal signs, tool boxes of metal, tool chests of metal, key rings of metal, and metal personal identification tags in class 006 |
| 3,697,874 |  | Oct. 20, 2009 | For: Motorcycles and structural parts therefor in class 012 |
| 3,697,875 |  | Oct. 20, 2009 | For: Shirts, hats, caps in class 025 |

| 4,465,604 |  | Jan. 14, 2014 | For: Clothing, namely, shirts, hats, caps, belts, jackets, gloves, sweatshirts, lounge pants, and wrist bands in class 025 |
| 4,465,650 |  | Jan. 14, 2014 | For: Motorcycles and structural parts therefor in class 012 |
| 4,487,292 |  | Feb. 25, 2014 | For: Motorcycles and structural parts therefore in class 012 |

| 4,487,293 |  | Feb. 25, 2014 | For: Motorcycle modification and customization; providing a web site featuring information regarding motorcycle customization services; providing consultation services regarding motorcycle customization in class 037 |
| 4,528,269 |  | May 13, 2014 | For: Jewelry, namely, earrings, necklaces in class 014 |
| 4,601,391 |  | Sep. 09, 2014 | For: Cell phone covers in class 009 |
| 4,601,394 |  | Sep. 09, 2014 | For: Cell phone covers in class 009 |

| 4,771,442 |  | Jul. 14, 2015 | For: A full line of jewelry in class 014 |
| 4,844,360 |  | Nov. 03, 2015 | For: Parts of motorcycles, excluding parts of all motors and engines, namely, derby covers, air cleaner trim, timer covers, battery cover band, fuel caps, brake caliper inserts, fender skirts, console doors, head lamp visors, medallions, foot pegs, gearshift linkages, foot board covers, handlebar clamps, hand grips, fuel gauges, guard rail inserts, axle nut covers, breather end cap, valve stem caps, foot boards, turn signal visors, pivot bolt covers, tank panel, fender tip lens kit, console insert, air cleaner cover, decorative end caps, mirrors and mounting hardware for the aforesaid goods in class 012 |
| 1,654,280 | HD | Aug. 20, 1991 | For: Jewelry, namely lapel pins, earrings, necklaces and bracelets in class 014 |
| 4,771,447 | HARLEY-DAVIDSON | July 14, 2015 | For: house mark for a full line of jewelry in class 014 |

11.    The above U.S. registrations for the HARLEY-DAVIDSON Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. True and correct copies of the United States Registration Certificates for the above-listed HARLEY-DAVIDSON Trademarks are attached hereto as **Exhibit 1**.

12.    The HARLEY-DAVIDSON Trademarks are distinctive when applied to the Harley-Davidson Products, signifying to the purchaser that the products come from Harley-Davidson and are manufactured to Harley-Davidson's quality standards. Whether Harley-Davidson manufactures the products itself or contracts with others to do so,

Harley-Davidson has ensured that products bearing the HARLEY-DAVIDSON Trademarks are manufactured to the highest quality standards.

13. The HARLEY-DAVIDSON Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Harley-Davidson Products have enabled the Harley-Davidson brand to achieve widespread recognition and fame and have made the HARLEY-DAVIDSON Trademarks some of the most well-known marks in the world. The widespread fame, outstanding reputation, and significant goodwill associated with the Harley-Davidson brand have made the HARLEY-DAVIDSON Trademarks valuable assets of Harley-Davidson.

14. Genuine Harley-Davidson Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Harley-Davidson brand.

15. Harley-Davidson has numerous licensees in the United States that are authorized to sell a wide range of Harley-Davidson Products. These licensees have offered a wide variety of products under the Harley-Davidson Trademarks for decades.

16. Harley-Davidson has standards and guidelines to which all authorized licensed products branded with the Harley-Davidson Trademarks must adhere. These standards and guidelines allow Harley-Davidson to control the quality and appearance, among other things, of licensed Harley-Davidson Products. Moreover, all licensed Harley-Davidson Products are subject to Harley-Davidson's prior written approval before they are manufactured, promoted, and sold to the public.

17.   Harley-Davidson Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design.  Among the purchasing public, genuine Harley-Davidson Products are instantly recognizable as such.  In the United States and around the world, the Harley-Davidson brand has come to symbolize high quality, and Harley-Davidson Products are among the most recognizable in the world.  Harley-Davidson Products are distributed and sold to consumers through a network of nearly 700 authorized dealers located throughout the country and numerous other retail outlets.

18.   Genuine Harley-Davidson Products have also been promoted and sold at the official Harley-Davidson.com website and through authorized dealers' websites for many years. Sales of Harley-Davidson Products via the Harley-Davidson.com website are significant. The Harley-Davidson.com website features proprietary content, images and designs exclusive to the Harley-Davidson brand.  Attached hereto as **Exhibit 2** is a true and correct copy of a portion of the Harley-Davidson.com website.

19.   Harley-Davidson Products and the Harley-Davidson Trademarks have received significant unsolicited media coverage for many years, including, for example, in national publications such as *Business Week, The Chicago Tribune, The New York Times, The Wall Street Journal, The Washington Post,* and *USA Today,* as well as in numerous national television programs and online publications and websites, such as MSNBC, CNN Money, cnn.com, and Yahoo! Finance.

20.   Harley-Davidson and its dealers and licensees have sold many billions of dollars of products and services under the Harley-Davidson Trademarks over the years, and have expended millions of dollars advertising and promoting those marks through virtually

every media. For example, Harley-Davidson has promoted its products and marks through dealer promotions, customer events, direct mailings, national television, print, and radio advertisements, and the Internet. As a result, products bearing the HARLEY-DAVIDSON Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Harley-Davidson. Harley-Davidson Products have become among the most popular of their kind in the U.S. and the world. The HARLEY-DAVIDSON Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.

21.    As a result of Harley-Davidson's significant promotional efforts, commercial success, and popularity, the HARLEY-DAVIDSON brand has been ranked annually for the past decade among the top 100 most valuable brands in the world by Interbrand, a leading independent branding firm. In 2015, Interbrand estimated the value of the HARLEY-DAVIDSON brand at US $5.46 billion. The goodwill associated with the HARLEY-DAVIDSON brand and the HARLEY-DAVIDSON Trademarks is of incalculable and inestimable value to Harley-Davidson.

22.    The success of the Harley-Davidson brand has resulted in its significant counterfeiting. Consequently, Harley-Davidson has a worldwide anti-counterfeiting program and regularly investigates suspicious online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Harley-Davidson has identified many online marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the fully interactive, commercial Internet stores operating under at least the Online Marketplace Accounts identified in Schedule A

attached to the Amended Complaint (collectively, the "Defendant Internet Stores"), which were offering for sale and selling unauthorized and unlicensed counterfeit products, including motorcycle parts, apparel, jewelry, and other goods, using counterfeit versions of the federally registered HARLEY-DAVIDSON Trademarks (collectively, the "Counterfeit Harley-Davidson Products") to consumers in this Judicial District and throughout the United States. Despite Harley-Davidson's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores.

23. I perform, supervise, and/or direct investigations related to Internet-based infringement of the HARLEY-DAVIDSON Trademarks. Our investigation shows that Defendants are using the Defendant Internet Stores to sell Counterfeit Harley-Davidson Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the Defendant Internet Stores and determined that Counterfeit Harley-Davidson Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each Defendant Internet Store, the price at which the Counterfeit Harley-Davidson Products were offered for sale, other features commonly associated with online marketplace listings selling counterfeit products, and because Defendants and their Defendant Internet Stores do not conduct business with Harley-Davidson and do not have the right or authority to use the HARLEY-DAVIDSON Trademarks for any reason. In addition, each Defendant Internet Store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active Defendant Internet Stores reviewed are attached as **Exhibit 3**.

24.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal.  The Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos.  Harley-Davidson has not licensed or authorized Defendants to use any of the HARLEY-DAVIDSON Trademarks, and none of the Defendants are authorized retailers of genuine Harley-Davidson Products.

25.     Many Defendants also deceive unknowing consumers by using the HARLEY-DAVIDSON Trademarks without authorization within the content, text, and/or meta tags of their online marketplace listings in order to attract consumers searching for Harley-Davidson Products.  Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Harley-Davidson Products.  Other Defendants only show the HARLEY-DAVIDSON Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Harley-Davidson Products.

26.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores.

On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

27. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, Counterfeit Harley-Davidson Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Harley-Davidson Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, and the use of the same text and images, including content copied from Harley-Davidson's official Harley-Davidson.com website.

28. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small

quantities via international mail to minimize detection by U.S. Customs and Border Protection.

29.     Counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Harley-Davidson's enforcement efforts.  On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

30.     Monetary damages cannot adequately compensate Harley-Davidson for ongoing infringement because monetary damages fail to address the loss of control of and damage to Harley-Davidson's reputation and goodwill.  Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Harley-Davidson's reputation and goodwill by acts of infringement.

31.     Harley-Davidson's goodwill and reputation are irreparably damaged when the HARLEY-DAVIDSON Trademarks are used in connection with the offering for sale or sale of goods or services not authorized, produced, or manufactured by Harley-Davidson.  Moreover, brand confidence is damaged, which can result in a loss of future sales and market share.  The extent of harm to Harley-Davidson's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

32.     Harley-Davidson is further irreparably harmed by the unauthorized use of the HARLEY-DAVIDSON Trademarks because counterfeiters take away Harley-Davidson's ability to control the nature and quality of the Counterfeit Harley-Davidson Products.  Loss of quality control over goods offered for sale or sold under the HARLEY-DAVIDSON

Trademarks and, in turn, loss of control over Harley-Davidson's reputation, is neither calculable nor precisely compensable.

33. The use of the HARLEY-DAVIDSON Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Harley-Davidson is likely causing and will continue to cause consumer confusion, which weakens Harley-Davidson's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit Harley-Davidson Products he or she has purchased originated from Harley-Davidson will come to believe that Harley-Davidson offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Harley-Davidson Products, resulting in a loss or undermining of Harley-Davidson's reputation and goodwill. Indeed, there is damage to Harley-Davidson's reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit. Prospective consumers who see inferior Counterfeit Harley-Davidson Products used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Harley-Davidson and the HARLEY-DAVIDSON Trademarks. Such post-sale confusion results in damage to Harley-Davidson's reputation and correlates to a loss of unquantifiable future sales.

34. Harley-Davidson is further irreparably damaged due to a loss of exclusivity. Harley-Davidson's products are meant to be exclusive. Harley-Davidson's extensive marketing efforts and innovative designs are aimed at growing and sustaining sales. The HARLEY-DAVIDSON Trademarks are distinctive and signify to consumers that the products originate from Harley-Davidson and are manufactured to Harley-Davidson's high quality standards. When counterfeiters use the HARLEY-DAVIDSON Trademarks to offer for

sale or sell goods without Harley-Davidson's authorization, the exclusivity of Harley-Davidson's products, as well as Harley-Davidson's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

35.     Harley-Davidson will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the _____ day of June 2017 at Milwaukee, Wisconsin.

Linda Heban